**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MARY KEETEN, *individually, and on behalf of all similarly situated persons,* | ) | |
| Plaintiff, | ) | Case No.: 4:25-cv-00701-SDJ |
| v. | ) | COMPLAINT |
| AXIOM ACQUISITION VENTURES, LLC and SPIRE RECOVERY SOLUTIONS, LLC, | ) | DEMAND FOR TRIAL BY JURY |
| Defendants. | ) | |

**AMENDED COMPLAINT – CLASS ACTION**

1. Plaintiff Mary Keeten ("Plaintiff"), individually, and on behalf of all similarly situated persons, brings this action against Axiom Acquisitions Ventures, LLC ("Axiom") and Spire Recovery Solutions, LLC ("Spire")[1] to secure redress for their collection of unlawful debts, consisting of illegal high-interest Internet loans.

**JURISDICTION AND VENUE**

2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiff asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over Defendants because they knowingly collected unlawful loans from residents of Texas, including Plaintiff, located in this District.

4. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiff's claims occurred in Denton County, Texas.

[1] Plaintiff sometimes collectively refers to Axiom and Spire as "Defendants."

5. Article III is satisfied because actions for making or collecting usurious loans were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

**PARTIES**

6. Plaintiff is a natural person and a resident of Denton County, Texas.

7. Defendant Spire Recovery Solutions, LLC is a limited liability company organized under the laws of New York with its principal place of business located at 57 Canal Street, Suite 302, Lockport, New York, 14094.

8. Spire is a collection agency, using interstate wires and the Internet to collect consumer debts for others.

9. Spire collects debts from consumers throughout the United States, including consumers residing in Texas, like Plaintiff.

10. Spire obtained a surety bond from the Texas Secretary of State in order to engage in debt collection activities in Texas.

11. On its website, Spire states that it is "a nationally-licensed collection agency[.]" (https://spirerecoverysolutions.com/).

12. Spire is a debt collector as defined in the FDCPA, 15 U.S.C. §1692a(6).

13. Defendant Axiom Acquisitions Ventures, LLC is a Florida limited liability company with its principal place of business in Tampa, Florida.

14. Axiom is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

15. Axiom claims to be an "RMAi-certified accounts receivable company[.]" (https://axiomavportfolio.com/servicing/).

16. Axiom claims that it is "in full compliance with all local, state, and federal regulations." (https://axiomavportfolio.com/purchasing/).

17. Part of Axiom business includes purchasing delinquent debt portfolios.

18. Axiom also provides "[c]ontingent servicing for [its] partners who need an alternative to selling their portfolios." (https://axiomavportfolio.com/servicing).

19. Through its affiliate Full Circle Financial Services, LLC, Axiom "provides end-to-end debt portfolio servicing capabilities." *Id*.

## FACTS

### A. Defendants' Collection Attempts

20. On or about February 21, 2025, Spire, at the direction of Axiom, sent a letter to Plaintiff seeking to collect a purported debt. (Exhibit A).

21. This alleged debt consisted of a high-interest loan made to Plaintiff by WLCC Lending AIL dba GoodLoansFast ("GoodLoansFast"), an Internet lender *Id*.

22. The reference number associated with this purported debt is 4876082.

23. In February 2025, Defendants sent several text messages to Plaintiff seeking to collect the illegal and void loan.

24. One of those text messages stated in part:

> …Hi MARY, this is Spire Recovery Solutions. [] The bad news: [] We've received another account of yours needing attention. [] The good news: [] We're here to help! We offer multiple options to resolve it. Please text or call us at [] 716-747-0210 [], referencing [] File Number: 4876082 []. You can..."

(Exhibit B).

25. The callback number referenced in the text message—(716) 747-0210—is used by Spire.

26. These collection attempts were authorized by Axiom, who purports to own the debt.

27. Both Spire and Axiom are liable for the attempts to collect the debt.

**B. California's Usury Laws**

28. "Usury—the charging of excessive interest rates—is an ancient practice dating back to the earliest commercial civilizations."[2] Robert R. Rickett, *California's Model Approach to Usury*, 18 Stan. L. Rev. 1381 (1966).

29. California, founded in 1850, has regulated interest rates since 1872. *See id.* at 1385.

30. The law of usury in California is based upon California Constitution article XV, section 1, which limits the interest payable "[f]or any loan or forbearance of any money." *Sw. Concrete Products v. Gosh Constr. Corp.*, 798 P.2d 1247, 1249 (Cal. 1990) (quoting Cal. Const. Art. XV § 1).

31. Under the California Constitution, "unless a lender falls into one of the exemptions approved by the state legislature, it may not charge more than 10% interest per annum on a loan." *Dev. Acquisition Group, LLC v. EA Consulting, Inc.*, 776 F. Supp. 2d 1161, 1164 (E.D. Cal. 2011) (citing Cal. Const. Art. XV § 1).

32. "An interest rate in excess of 10% is usurious, and if a lender negotiates a loan at a usurious rate absent a qualified exemption, the agreement shall be void and the lender will have no action at law to recover any interest." *Id.*

[2] Indeed, about "a dozen Biblical passages suggest that usurious lending, especially to the poor, is a grave sin." Christopher L. Peterson, *Warning: Predatory Lender"—A Proposal for Candid Predatory Small Loan Ordinances*, 69 Wash & Lee L. Rev. 893, 896 n.9 (2012).

33. California's usury laws are primarily designed to penalize those who take advantage of "unwary and necessitous borrowers," *Del Mar v. Caspe*, 222 Cal. App. 3d 1316, 1326 (Cal. Ct. App. 1990), and its consumer and borrower protections support a robust and longstanding public policy against the types of unconscionable and usurious loans at issue in this action. The California statutory scheme is "liberally construed and applied to promote its underlying purposes and policies" including "to protect borrowers against unfair practices by some lenders," and "encourage the development of fair and economically sound lending practices." Cal. Fin. Code § 22001(a).

34. If a lender makes a loan in violation of Art. XV § 1, then "[n]o person, company, association, or corporation shall directly or indirectly take or receive in money, goods, or things" and the loan is void. Cal. Civ. Code § 1916-2.

35. Cal. Const. Art. XV § 1 reflects an important public policy of the State of California. California's prohibition on usury is enshrined in its constitution and the laws prohibiting usurious loans and granting recourse to those who have been wronged by such loans are created by statute and cannot be waived. A public policy that cannot be waived is fundamental.

36. In addition to their violation of California's general usury law, the loans at issue in this case violated California's financing laws because they were made without a license and imposed interest rates far greater than those permitted under California law.

37. GoodLoansFast has never had a lending license from the California Department of Financial Protection and Innovation ("DFPI").

38. As a result, California law renders the entire contract "void," and "no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction." Cal. Fin. Code § 22750.

39. Lending at usurious interest rates also constitutes a violation of California's unfair competition laws, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, or deceptive business practices. Cal. Bus. & Prof. Code § 17200.

**C. Plaintiff's Loan**

40. In 2021, GoodLoansFast made a $846.73 loan to Plaintiff at an interest rate exceeding 647%.

41. The disclosed finance charge is $2,431.55.

42. The loan was made for personal, family, or household purposes, not business purposes.

43. Plaintiff resided in California when the loan was made to her.

44. The loan is therefore subject to California's usury laws. *Federal Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139, 147 (5th Cir. 1981) ("The district court correctly concluded that [state] law determines whether this note was usurious.").

45. Plaintiff did not travel to South Dakota, or to any lands claimed to be owned by the Oglala Sioux Tribe ("Tribe"), the Wakpamni Lake Community, or WLCC Lending AIL to obtain the loan.

46. Plaintiff made payments on the loan, including interest payments, while residing in Texas.

47. Some of these payments were made to Defendants, and some to the nominal lender, GoodLoansFast.

48. GoodLoansFast is not and has never been licensed by the State of California to make consumer loans.

49. GoodLoansFast is not and has never been licensed by the Texas Office of Consumer Credit Commissioner.

50. Defendants know or should have known that collecting usurious and/or void loans is unlawful, as they are in the business of debt collection.

51. As discussed herein, the loan made to Plaintiff is illegal and void under Cal. Fin. Code § 22750.

52. The communications Defendants sent Plaintiff represented that she owed money.

53. However, Plaintiff is not required to repay the loan as it is usurious and void under California law.

54. On March 13, 2025, the undersigned counsel sent a letter to Spire disputing the validity of the debt, revoking any permission to debit Plaintiff's accounts, and seeking verification of the debt. (Exhibit C).

55. The letter also requested that Spire provide proof that it or its principal is in fact the assignee of the debt identified by reference number 4876082. *Id.*

56. Spire received the letter on March 17, 2025. (Exhibit D).

57. Neither Spire nor Axiom responded to Plaintiff's counsel's letter.

58. Axiom has not provided Plaintiff or her counsel with documentation showing that it purchased any loan made to Plaintiff.

59. Unless enjoined, Defendants will continue to collect the usurious loans at issue here. They follow a policy and practice of placing multiple collection communications to the same consumer, as evidenced by Plaintiff's experience.

60. In addition to repaying the usurious loan, the text messages sent to Plaintiff:

a. Cost money to receive;

b. Caused reduction and loss of Plaintiff's cell phone's battery life;

c. Cost electricity required to charge Plaintiff's cell phone; and

d. Are annoying.

**D. The Nominal Lender, GoodLoansFast**

61. In an attempt to evade prosecution under usury laws of states like California and Texas, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to sovereign immunity as a purported arm of a Native American tribe.

62. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

63. GoodLoansFast does not qualify.

64. The Tribe receives only a couple of pennies of each dollar as "rent," and 98% or more of revenues flow to non-tribal persons and entities.

65. None of GoodLoansFast's business is conducted on the Tribe's reservation. All essential business operations are performed in other locations outside of the Tribe's jurisdiction.

66. Further, sovereign immunity, even if legitimately invoked, cannot transform an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

67. As the Fourth Circuit held in similar litigation: "substantive state law applies to off-reservation conduct," such as online loans marketed, collected, and paid by consumers in California or Texas. *Hengle v. Treppa*, 19 F.4th 324, 348 (4th Cir. 2021); *see also Jackson v. Payday*

*Fin., LLC*, 764 F.3d 765, 777-79 (7th Cir. 2014). And “although the Tribe it-self cannot be sued for its commercial activities,” its members, officers, and business partners “can be.” *Hengle*, 19 F.4th at 348.

68. Even if loans are actually made by a tribe and the tribe cannot be sued, the loans are not enforceable and a debt collector cannot represent otherwise, expressly or by implication.

69. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

**E. Invalidity of Arbitration Agreement**

70. To further attempt to insulate itself from legal action for usury, GoodLoansFast included an arbitration agreement in its loan documents which (a) purports to require arbitration, (b) requires the arbitrator to decide what is arbitrable (“delegation provision”), and (c) forbids the arbitrator from applying the law of any state: “Neither this Agreement nor the Lender is subject to the laws of any State of the United States. You agree to be bound by Tribal Law, and in the event of a bona fide dispute between you and us, Tribal Law shall exclusively apply to such dispute.”

71. The arbitration agreement, including the delegation provision, is an invalid prospective waiver of Plaintiff’s statutory rights.

72. The arbitration agreement and delegation provision are also unconscionable. *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126-28 (2d Cir. 2019).

73. Finally, the Tribe does not have civil authority to prescribe rules of law for transactions conducted over the Internet with non-members of the Tribe. *Jackson v. Payday Fin.*, LLC, 764 F.3d 765, 782 (7th Cir. 2014); *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 115 (2d Cir. 2014).

74. GoodLoansFast does not make loans members of the Tribe.

75. The Tribal Law purporting to validate the loans applies solely to non-members and purports to authorize what would otherwise be criminal or illegal conduct against them.

76. An arbitration agreement arises under State law; the Federal Arbitration Act merely prohibits states from discriminating against arbitration agreements. *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022); *Arthur Andersen L.L.P. v. Carlisle*, 556 U.S. 624, 631 (2009). By disclaiming State law, the agreement disclaims the only law which could permit its enforcement.

**COUNT I:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §§ 1692(e), (f)**

77. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

78. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class—the "FDCPA Class"—initially defined as:

> (a) All natural persons (b) from whom Defendants attempted to collect a debt (c) consisting of a loan made to a resident of California (according to Defendants' records) at an interest rate exceeding 30% (d) which loan was made by a lender not licensed by the California Department of Financial Protection and Innovation (e) during the year prior to filing this action.

Plaintiff is a member of the FDCPA Class.

79. Plaintiff may alter the class definition to conform to developments in the case and discovery.

80. **Numerosity. Fed. R. Civ. P. 23(a)(1).** While Plaintiff does not know the exact number of class members at this time, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Defendants specialize in collecting high-interest Internet loans, as evidenced by the information on their websites, as well as the fact that collection agencies typically obtain blocks of similar loans rather than individual loans. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

81. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and there are no factual or legal issues that differ between the putative class members. These questions will predominate over the questions affecting only individual class members. The common questions include: (1) whether Defendants engage in a practice of attempting to collect loans with interest rates that are higher than California's allowable interest rate; (2) whether such loans are unenforceable; (3) whether collecting or attempting to collect said loans violates the FDCPA; and (4) what is the proper recovery for Plaintiff and the class members.

82. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

83. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to,

the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them to not vigorously pursue this action.

84. **Superiority. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in that: (a) individual actions are not economically feasible, and (b) members of the class are likely to be unaware of their rights.

85. **Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2).** Defendants have acted or refused to act on grounds that apply generally to the class, rendering injunctive and declaratory relief appropriate for the class as a whole.

86. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f, and 1692g.

87. In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

88. Because of this, courts have held that the FDCPA "should be construed broadly and in favor of the consumer" in order to achieve its "broad remedial scope." *Manuel v. Merchs. & Prof'l Bureau, Inc*., 956 F.3d 822, 826 (5th Cir. 2020).

89. Plaintiff seeks to enforce those policies and civil rights expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

90. By attempting to collect a void loan, Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1).

91. Section 1692e provides:

> False or misleading representations
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

92. Section 1692f provides:

> Unfair practices
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

93. The collection or attempted collection of usurious loans violates the FDCPA. *Pollice v. National Tax Funding LP.*, 225 F.3d 379, 408 (3rd Cir. 2000); *Nance v. Ulferts*, 282 F.Supp.2d 912 (N.D. Ind. 2003); *Pakka v. Viterbo College*, 917 F.Supp. 654, 658 (W.D. Wisc. 1996); *Martinet v. Albuquerque Collection Services, Inc.*, 867 F.Supp. 1495 (D.N.M. 1994).

94. As the loans at issue are legally unenforceable, no attempt to collect them is lawful.

95. Defendants nevertheless attempted to collect Plaintiff's loan by contacting her, representing that said loan was enforceable, and demanding payment.

96. Accordingly, Plaintiff, individually and on behalf of the class, requests: (i) actual damages; (ii) statutory damages; (iii) a declaration that Defendants' attempts to collect the loans was unlawful; (iv) an order prohibiting Defendants from attempting to collect the loans from Plaintiff and the class members; and (v) attorney's fees, costs, and expenses.

## COUNT II: VIOLATIONS OF THE TEXAS DEBT COLLECTION PRACTICES ACT Tex. Fin. Code Ann. § 392.304

97. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

98. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class—the "TDCPA Class"—initially defined as:

> All natural persons who (a) within the two years prior to filing this action (b) resided in Texas when (c) Defendants collected a loan made to them at an interest rate exceeding 200% (d) which loan was made while such person resided in Illinois, California, Georgia, Virginia, Minnesota, New York, Rhode Island, or Texas.

Plaintiff is a member of the TDCPA Class.

99. Plaintiff may alter the class definition to conform to developments in the case and discovery.

100. **Numerosity. Fed. R. Civ. P. 23(a)(1).** While Plaintiff does not know the exact number of class members at this time, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members. Thus, the class is so numerous that joinder of all members is impracticable. Defendants specialize in collecting high-interest Internet loans, as evidenced by the information on their websites, as well as the fact that collection agencies typically obtain blocks of similar loans rather than individual loans. Additionally, the names and addresses of the class members are identifiable through the internal business records maintained by

Defendants, and the class members may be notified of the pendency of this action by published and/or mailed notice.

101. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the class, and there are no factual or legal issues that differ between the putative class members. These questions will predominate over the questions affecting only individual class members. The common questions include: (1) whether Defendants engage in a practice of attempting to collect loans made at illegal interest rates; (2) whether such loans are unenforceable; (3) whether collecting or attempting to collect said loans violates the TDCPA; and (4) what is the proper recovery for Plaintiff and the class members.

102. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

103. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent; she has retained counsel competent and experienced in such litigation; and they have and intend to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the class. Neither Plaintiff nor her counsel have any interests which might cause them to not vigorously pursue this action.

104. **Superiority. Fed. R. Civ. P. 23(b)(3).** A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in that: (a) individual actions are not economically feasible, and (b) members of the class are likely to be unaware of their rights.

105. **Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2).** Defendants have acted or refused to act on grounds that apply generally to the class, rendering injunctive and declaratory relief appropriate for the class as a whole.

106. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

107. Defendants are "debt collector[s]" and/or "third party debt collector[s]" as defined by Tex. Fin. Code Ann. §§ 392.001(6) and 392.001(7).

108. The subject consumer debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

109. The TDCPA, pursuant to Tex. Fin. Code Ann. § 392.304(8), prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt…." Tex. Fin. Code Ann. § 392.304(8).

110. In informing Plaintiff that she owed money on a usurious and void loan, Defendants misrepresented the legality and character of the debt.

111. The TDCPA also prohibits a debt collector from "using any . . . false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. § 392.304(19).

112. Defendants violated the above-referenced sections of the TDCPA in much the same way they violated the FDCPA.

113. Accordingly, Plaintiff individually and on behalf of the TDCPA Class requests: (i) actual damages; (ii) statutory damages; (iii) a declaration that Defendants' attempts to collect the loans were unlawful; (iv) an order prohibiting Defendants from attempting to collect usurious loans from Plaintiff and the class members; and (v) attorney's fees, costs, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment for Plaintiff and the Classes and against Defendants as follows:

A. An Order certifying the proposed Classes under Fed. R. Civ. P. 23(b)(3) and (b)(2) and appointing Plaintiff as class representatives and her counsel as class counsel, as soon as practicable;

B. An Order declaring that Defendants are financially responsible for notifying class members of the pendency of this suit;

C. An Order declaring that Defendants committed the violations of law alleged herein;

D. An Order providing for any and all injunctive relief the Court deems appropriate;

E. An Order awarding monetary damages including, but not limited to, all actual, statutory, and punitive damages in an amount to be determined by the Court or jury;

F. An Order awarding interest at the maximum allowable legal rate on the foregoing sums;

G. An Order awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees; and

H. Such further relief as the Court may deem just and proper.

Dated: September 16, 2025

*/s/ Matthew J. Goldstein*

Mark R. Miller (IL ARDC # 6283542)
Matthew J. Goldstein (IL ARDC # 6339033)
Julia Ozello (IL ARDC # 6336504)
**WALLACE MILLER**
200 West Madison Street, Suite 3400
Chicago, IL 60606
T: 312.261.6193
F: 312.275.8174
mrm@wallacemiller.com
mjg@wallacemiller.com
jo@wallacemiller.com

*Counsel for Plaintiff*